IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| WASTE MANAGEMENT, INC., *et al.*, <br> Plaintiffs, <br><br> v. <br><br> GREAT DIVIDE INSURANCE, CO., *et al.*, <br> Defendants. | ) <br> ) <br> ) <br> ) Civil No. 3:17cv60 (MHL) <br> ) <br> ) <br> ) <br> ) |

REPORT AND RECOMMENDATION

This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) on Plaintiffs Waste Management, Inc. ("WMI"), Waste Management of Virginia, Inc. ("WMVA"), King George Landfill, Inc. ("KGL") and King George Landfill Properties, LLC's ("KGLP") (collectively, "Plaintiffs") Motion to Dismiss Defendants Great Divide Insurance Company ("Great Divide") and Nautilus Insurance Company's ("Nautilus") (collectively, "Defendants") Counterclaim ("Motion to Dismiss") (ECF No. 20), filed on April 3, 2017; Defendants' Motion to Dismiss Underlying Claimant Parties (ECF No. 28), filed on April 19, 2017; Defendants' Motion to Drop the Waste Management Subsidiaries as Parties or Declare them Nominal or Unnecessary Parties ("Motion to Drop") (ECF No. 29), also filed on April 19, 2017; and, Defendants' Motion to Strike (ECF No. 37), filed on April 24, 2017 (collectively, the "Instant Motions"). United States District Judge M. Hannah Lauck referred these Motions to the undersigned for a Report and Recommendation. (ECF Nos. 34, 41 & 49.) For the reasons set forth below, the Court recommends that Plaintiffs' Motion to Dismiss (ECF No. 20) be GRANTED IN PART and DENIED IN PART, Defendants' Motion to Dismiss Underlying

Claimant Parties (ECF No. 28) be DENIED as MOOT, Defendants' Motion to Drop (ECF No. 29) be DENIED, and Defendants' Motion to Strike (ECF No. 37) be GRANTED.

## I. BACKGROUND

The Court construes the allegations in favor of the non-moving party, as required when resolving a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c); *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004) (citations omitted). Accordingly, for purposes of resolving the Instant Motions, the Court finds the relevant facts as follows.

### A. The Robinson Suit.

On October 18, 2011, Arthur Robinson ("Robinson") allegedly suffered injuries from an accident at the King George Landfill (the "Landfill") in Virginia. (Am. Compl. (ECF No. 6) ¶ 11; Ex. A to Am. Compl. ("Robinson Compl.") (ECF No. 6-1) ¶¶ 8, 22.) At the time, Robinson worked for TAC Transport, LLC ("TAC")[1] as a commercial garbage truck driver, and he had driven a trailer to the Landfill to dispose of garbage. (Am. Compl. ¶¶ 11-12; Robinson Compl. ¶ 8.) Commercial drivers used equipment provided by the Landfill, including a "tipper device" to raise, tip and lower trailers and thereby unload garbage. (Am. Compl ¶ 13; Robinson Compl. ¶ 11.)

While Robinson waited in line to dump the contents from his trailer, a malfunction occurred during the tipping process of the trailer just ahead of him that was driven by Earl Kennedy ("Kennedy"). (Am. Compl. ¶ 15; Robinson Compl. ¶¶ 16-18.) Robinson claims that Landfill employees nearby should have assisted Kennedy, but they did not. (Am. Compl. ¶ 16; Robinson Compl. ¶ 20.) Instead, Kennedy — also a TAC employee — asked for Robinson's

---

[1] The parties agree that TAC is now defunct. (Am. Compl. ¶ 19; Answer to Am. Compl. & Countercl. of Defs. ("Answer" or "Countercl.") (ECF No. 15) ¶ 19.)

2

help in manually closing the rear door to Kennedy's trailer, and Robinson obliged. (Am. Compl. ¶ 16; Robinson Compl. ¶¶ 21-22.) Robinson climbed onto the tipping platform and, while assisting Kennedy, he fell backwards, landing on the ground fifteen to twenty feet below, sustaining serious injuries. (Am. Compl. ¶ 16; Robinson Compl. ¶ 22.)

On October 4, 2013, Robinson filed a complaint in the King George County Circuit Court (the "Robinson Suit"), alleging one count of negligence each against WMI, WMVA, KGL and KGLP, as the entities that "owned, operated, managed and/or w[ere] responsible for the Landfill." (Am. Compl. ¶ 17; Robinson Compl. ¶¶ 4-7, 23-46.) Robinson seeks $10,000,000 in damages jointly and severally from those four entities. (Am. Compl. ¶ 17; Robinson Compl. at 7, 10, 12, 15.)

## B. The Thomas Suit.

On November 18, 2011, Andre L. Thomas ("Thomas"), also a driver employed by TAC, allegedly suffered injuries when a load of garbage fell on him at the Baltimore Refuse Energy Systems Company plant (the "BRESCO Plant") in Baltimore, Maryland. (Countercl. ¶ 7; Ex. A to Countercl. ("Thomas Compl.") (ECF No. 15-1) ¶ 11.) Thomas went to the BRESCO Plant to unload 400- to 700-pound bales of trash into an incinerator. (Countercl. ¶ 8; Thomas Compl. ¶ 11.) An employee at the BRESCO Plant, Horace Walker ("Walker"), allegedly directed Thomas to cut the wire holding the bales together before dumping them. (Countercl. ¶¶ 11-12; Thomas Compl. ¶ 11.) Walker provided Thomas with wire cutters, and Thomas began unloading the bales to cut them. (Countercl. ¶¶ 13-14; Thomas Compl. ¶ 11.) While Thomas attempted to cut wire from the bales and Walker operated a bulldozer to move the trash into the incinerator pit, the garbage load shifted, falling onto Thomas. (Countercl. ¶¶ 13-14; Thomas Compl. ¶ 11.)

On October 28, 2014, Thomas filed a negligence claim in the Baltimore City Circuit Court in Maryland against nine entities,[2] seeking $75,000 in damages (the "Thomas Suit"). (Thomas Compl. at 1.) In their Counterclaim, Defendants seek declaratory judgments against the Thomas Suit Defendants and WMI, alleging that the relevant terms of the agreements that led Plaintiffs and the Thomas Suit Defendants to seek indemnification from Defendants are "essentially the same." (Countercl. ¶ 18.)

### C. Plaintiffs' Declaratory Judgment and Breach of Contract Actions.

On February 14, 2017, Plaintiffs (the four named defendants in the Robinson Suit) filed their Amended Complaint against Defendants, seeking declaratory judgments that Defendants have contractual duties to defend and indemnify Plaintiffs in the Robinson Suit, as well as alleging breach of contract claims for Defendants' failure to abide those duties to date. (Am. Compl. at 15-25.) Plaintiffs allege that Defendants' duty to defend and indemnify arises out of a contract between TAC and Waste Management of Maryland, Inc. ("WMM") (the "TAC-WMM Contract"), a subsidiary of WMI and an affiliate of WMVA. (Am. Compl. ¶¶ 20-26; Ex. B to Am. Compl. ("TAC-WMM Contract") (ECF No. 6-2).) According to Plaintiffs, the TAC-WMM Contract implicates three insurance policies that TAC held: a commercial general liability policy with Great Divide; a business auto policy with Great Divide; and, an excess liability policy with Nautilus. (Am. Compl. ¶¶ 27-44.)

---

[2] Thomas sued the following: Baltimore Refuse Energy Systems Company ("BRESCO"); Wheelabrator Baltimore, L.P. ("WBLP"); Wheelabrator Baltimore, Inc. ("WBI"); Wheelabrator Baltimore, LLC ("WBLLC"); Waste Management of Maryland, Inc. ("WMM"); Waste Management Disposal Services of Maryland, Inc. ("WMDSM"); Waste Management National Services, Inc. ("WMNS"); Waste Management Services, Inc. ("WMS"); and Wheelabrator Technologies, Inc. ("WT") (collectively, the "Thomas Suit Defendants"). (Countercl. ¶ 2(d)-(k); Thomas Compl. at 1-3.) Plaintiffs in this matter are not parties to the Thomas Suit.

### D. Defendants' Counterclaim.

Defendants filed their Answer and Counterclaim on March 13, 2017. (Answer & Countercl.) In Counts I-A, II-A, III and V-A of the Counterclaim, Defendants seek declaratory judgments directly opposite those sought by Plaintiffs — namely, that Defendants do *not* have duties to defend or indemnify Plaintiffs in the Robinson Suit. (Countercl. at 34-48, 53-54.) In Counts I-B, II-B, IV and V-B, Defendants seek declaratory judgments that they also have no duties to defend or indemnify WMI or the nine Thomas Suit Defendants who they seek to join.[3] (Countercl. at 34-42, 48-54.)

Related to the Thomas Suit, Defendants allege that TAC and WM Recycle America, LLC ("WMR") had a contract that, in "relevant terms," reads "essentially identical" to the TAC-WMM Contract and implicates the same insurance policies. (Countercl. ¶¶ 16-18; 31-99; Ex. B to Countercl. ("TAC-WMR Contract") (ECF No. 15-2).) Thus, Defendants seek resolution from the District Court of their duty to defend and indemnify — or not — in both the Robinson and Thomas Suits.

### E. The Instant Motions

Plaintiffs seek the dismissal of the Counterclaim, arguing its impropriety under the rules of joinder within the Federal Rules of Civil Procedure. Fed. R. Civ. P. 13, 19-20. (Mem. in Supp. of Mot. to Dismiss Countercl. ("Pls.' Mem.") (ECF No. 21) at 4-8.)

By contrast, Defendants seek dismissal of Mr. Robinson and Mr. Thomas, arguing that they lack standing in these coverage disputes, or alternatively, that the Court should declare them

---

[3] Defendants seek declaratory judgments relating to both the Robinson and Thomas Suits in Counts I, II and V of the Counterclaim. To avoid confusion, the Court refers to the portions of those Counts that relate to the Robinson Suit as subparts "A" and those relating to the Thomas Suit as subparts "B."

5

nominal parties. (Defs.' Mem. Supp. Mot. to Dismiss Underlying-Claimant Parties ("Defs.' Underlying Claimants Mem.") (ECF No. 30) at 11-12, 18.) Plaintiffs filed a consent stipulation of dismissal as to Mr. Robinson, which the District Court entered on May 1, 2017. (ECF No. 43.) Defendants also ask the Court to drop the Waste Management subsidiaries from the Amended Complaint and the Counterclaim, because WMI, the "real party in interest[,] . . . can obtain full relief" for its subsidiaries on its own. (Defs.' Mem. of Pts. & Auth. Supp. the Motion to Drop ("Defs.' Mot. to Drop Br.") (ECF No. 31) at 2, 8-10.)

## II. LEGAL STANDARD

The Court construes Plaintiffs' Motion to Dismiss as a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c). Courts review Rule 12(c) motions using the same standard of review as motion brought under Rule 12(b)(6). *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citation omitted). Thus, "[a] motion to dismiss tests the sufficiency of a [counterclaim]." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)). Importantly, a Rule 12(c) motion "does not resolve the merits of the . . . claims or any disputes of fact." *Drager*, 741 F.3d at 474 (citing *Butler v. United States*, 702 F.3d 749, 751 (4th Cir. 2012)). At the pleading stage, the Court must look to the allegations within the complaint, as well as within the counterclaim. Although typically constrained to the allegations contained therein, the Court may also "consider documents that are explicitly incorporated into the complaint [or counterclaim] by reference, . . . and those attached to the complaint [or counterclaim] as exhibits." *Goines*, 822 F.3d at 166.

When a party seeks to add additional claims or parties to the litigation, various rules of joinder within the Federal Rules of Civil Procedure apply. Fed. R. Civ. P. 13, 18-21. Under the Rules, trial courts enjoy "wide discretion" regarding issues of joinder. *See Aleman v. Chugach*,

6

485 F.3d 206, 218 n.5 (4th Cir. 2007) (citing *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (reviewing district court's finding that plaintiffs did not satisfy permissive joinder requirements of Rule 20)).

## III. APPLICATION

### A. Plaintiffs' Motion to Dismiss.

#### 1. Rule 13

Plaintiffs briefly argue that Defendants' Counterclaim asserts neither a compulsory counterclaim under Rule 13(a), nor a permissive counterclaim under Rule 13(b), because it brings nine (9) additional parties into the case and involves "different [underlying] plaintiffs, different accidents, different [underlying] defendants, [and] different states" such that it does not arise from the same transaction or occurrence as Plaintiffs' claims. (Pls.' Mem. at 3-8.) Defendants respond by highlighting that the parts of the Counterclaim asserted against only Plaintiffs, regarding only the coverage dispute over the Robinson Suit, constitute compulsory counterclaims.[4] (Opp'n of Defs. to Pls.' Mot. to Dismiss Defs.' Countercl. ("Defs.' Opp'n") (ECF No. 26) at 8.) Regarding the coverage dispute over the Thomas Suit, Defendants argue that the Court could view the Counterclaim as compulsory, because (1) it implicates "identical" relevant language in the two TAC agreements, (2) it involves the same insurance policies as the Amended Complaint, and (3) WMI is the only real opposing party in interest. (Defs.' Opp'n at 7-8, 11-12.) Further, Defendants focus on the contracts and insurance policies — and not the

---

[4] Defendants also move to strike Footnote 1 from Plaintiffs' reply brief on the Motion to Dismiss, arguing that the footnote raises a new issue not addressed in Plaintiffs' opening brief. (Mem. in Supp. of Mot. of the Insurer Defs. to Strike Footnote 1 in Pls.' Reply to Defs.' Opp'n (ECF No. 38) at 1-2.) Plaintiffs do not oppose the Motion to Strike. (Pls.' Resp. to Defs.' Mot. to Strike Footnote in Reply (ECF No. 46) at 1-2.) Finding good cause, and because Plaintiffs do not object, the Court recommends that Defendants' Motion to Strike (ECF No. 37) be GRANTED.

7

underlying accidents or state actions — as the same "series of transactions or occurrences" sufficient to qualify as either a compulsory counterclaim under Rule 13(a) or a permissive counterclaim under Rule 13(b) that also meets the requirements of Rule 20 for permissive joinder. (Defs.' Opp'n at 8, 10-13.) As explained below, the Court finds that Counterclaim Counts I-A, II-A, III and V-A constitute compulsory counterclaims that survive Plaintiffs' challenge, but that Counterclaim Counts I-B, II-B, IV and V-B do not qualify as compulsory counterclaims or properly brought permissive counterclaims.

> a. Counts I-A, II-A, III and V-A of the Counterclaim are compulsory under Rule 13(a).

Rule 13(a) requires defendants to bring compulsory counterclaims, which it defines in relevant part as claims that: "(A) arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) do not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1)(A)-(B). The Fourth Circuit has recognized the following inquiries that courts may use, as relevant, to determine the compulsory nature of a counterclaim:

> (1) [W]hether the issues of fact and law raised in the claim and counterclaim are largely the same;
> (2) [W]hether *res judicata* would bar a subsequent suit on the party's counterclaim;
> (3) [W]hether substantially the same evidence supports or refutes the claim as well as the Counterclaim; and
> (4) [W]hether there is any logical relationship between the claim and counterclaim.

*Vaughan v. Recall Total Info. Mgmt., Inc.*, 217 F. App'x 211, 223 (4th Cir. 2007) (citing *Painter v. Harvey*, 863 F.2d 329, 330 (4th Cir. 1988)) (additional citation omitted). Here, the language of Rule 13 alone establishes that Counts I-A, II-A, III and V-A of the Counterclaim qualify as compulsory.

8

Defendants' claims concerning the Robinson Suit request the direct opposite relief that Plaintiffs seek. (*Compare* Am. Compl. at 16, 18, 19, 25 (seeking declaratory judgments that Defendants have a duty to fully defend and/or indemnify Plaintiffs in the underlying Robinson Suit), *with* Countercl. at 35, 42, 48, 54 (seeking declaratory judgments that Defendants have no duty to defend or indemnify Plaintiffs from the Robinson Suit).) Where Plaintiffs seek declarations that Defendants must defend and indemnify Plaintiffs in the Robinson Suit, Defendants ask the Court to declare that no such duties exist. Thus, these claims leave no doubt that they arise from the same transaction or occurrence — Robinson's negligence claim in King George Circuit Court — satisfying the first requirement of a compulsory counterclaim. Fed. R. Civ. P. 13(a)(1)(A). These counts also do not require Defendants to add any additional parties, let alone a party over whom the Court lacks jurisdiction, thus satisfying the second prerequisite. Fed. R. Civ. P. 13(a)(1)(B).

Because they constitute compulsory counterclaims under Rule 13, the Court recommends that Plaintiffs' Motion to Dismiss be DENIED as to Counterclaim Counts I-A, II-A, III and V-A.

        b.  Counts I-B, II-B, IV and V-B of the Counterclaim are not compulsory under Rule 13(a).

Unlike the counts relating to coverage in the Robinson Suit, Counterclaim Counts I-B, II-B, IV and V-B (the "Thomas Counts") do not pass muster as compulsory. First, these Counts do not arise out of the "transaction or occurrence that is the subject matter of [Plaintiffs'] claim." Fed. R. Civ. P. 13(a)(1)(A). Plaintiffs brought this coverage dispute, seeking defense and indemnification in the Robinson Suit in Virginia state court. (Am. Compl. at 16, 18-19.) By tying in one original Plaintiff, WMI, Defendants seek resolution of a separate coverage dispute arising from the Thomas Suit in Maryland state court. (Countercl. at 24-25, 28, 35, 42, 53-54.)

9

Robinson's accident occurred on October 18, 2011, at the Landfill in King George County, Virginia, while he allegedly came to the aid of Kennedy, another TAC employee. (Am. Compl. ¶ 11, 15-16; Robinson Compl. ¶¶ 3, 8, 20-22.) Plaintiffs claim that the TAC-WMM Contract gives rise to Defendants' duties to defend and indemnify Plaintiffs in the Robinson Suit. (Am. Compl. ¶¶ 20-26.) The term of the TAC-WMM Contract ran from May 1, 2011 through April 30, 2016. (TAC-WMM Contract at 1-2.)

By contrast, Thomas's accident occurred on November 18, 2011, at the BRESCO Plant in Baltimore, Maryland, when he allegedly followed the instructions of a BRESCO Plant employee. (Countercl. ¶ 7, 11-13; Thomas Compl. ¶¶ 2, 11.) Defendants aver that the TAC-WMR Contract (the term for which began on March 22, 2010 and expired on January 31, 2013) has sufficiently similar language to that of the TAC-WMM Contract that this Court should resolve the coverage disputes arising from both the Robinson and Thomas Suits. (Countercl. ¶ 18; Defs.' Opp'n at 10.) Under any of the relevant inquiries, the Court does not view the coverage dispute in the Thomas Suit as compulsory.

From the guidance of the language of Rule 13 alone, the coverage dispute over the Thomas Suit does not arise from the same transaction or occurrence as the coverage dispute over the Robinson Suit. The facts of the underlying state actions necessarily inform whether or not Defendants have a duty to defend and/or indemnify Plaintiffs and/or Counter Defendants. *See, e.g., Capital Envtl. Servs., Inc. v. North River Ins. Co.*, 536 F. Supp. 2d 633, 635-645 (E.D. Va. 2008) (extensive discussion of underlying state negligence action in coverage dispute based on subcontract between waste management transportation company and general contractor of refinery). Here, the coverage disputes arise from two different underlying plaintiffs, allegedly injured at different times, at different locations, in different states, potentially implicating two

10

different transportation service agreements. Robinson allegedly suffered his injuries while attempting to help another TAC employee absent any aid from Landfill employees. Thomas, on the other hand, suffered alleged injuries while following instructions from a BRESCO Plant employee. At most, these coverage actions have in common that they (1) stem from state lawsuits brought by TAC employees, (2) involve transportation service agreements that contain similar language in certain provisions,[5] and (3) trigger (or do not trigger) coverage from one or more of three insurance policies. They arise from separate sets of facts and separate agreements, despite any common issues.

For these same reasons, the Court finds that the Thomas Counts of the Counterclaim do not raise "largely the same" issues of fact and law raised by the Amended Complaint. *Vaughan*, 217 F. App'x at 223. Nor will they rely on substantially the same evidence. *Id.* Where Plaintiffs' coverage dispute would rely on the TAC-WMM Contract and the factual underpinnings of the Robinson Suit, Defendants' coverage dispute would rely on the TAC-WMR Contract and the factual underpinnings of the Thomas Suit. Indeed, both actions would involve consideration of the same three insurance policies, but the evidentiary overlap ends there.

Similarly, *res judicata* would not bar a subsequent declaratory judgment action by Defendants asserting the claims made in Counts I-B, II-B, IV and V-B of the Counterclaim. *Id.* Here, the Court must look to the law of Virginia, the forum state of the original diversity action, to determine whether *res judicata* would preclude the Thomas Counts. *Semtek Int'l Inc. v.*

---

[5] Maryland contract law governs both service agreements. (TAC-WMM Contract ¶ 11; TAC-WMR Contract ¶ 18(d).) Maryland law interprets individual contract provisions "in the context of the contract as a whole." *Nova Research, Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 285 (Md. 2008); *Synergics Energy Servs., LLC v. Algonquin Power Fund (America), Inc.*, No. 13-2257, 2014 WL 2812230, at *23 (D. Md. June 20, 2014). Thus, the fact that the TAC-WMM and TAC-WMR Contracts contain the same insurance and indemnification provisions does not resolve the fact that the contracts differ in other provisions and in their terms.

11

*Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001). Virginia law applies a "same-subject-matter test" that largely parallels the same transaction or occurrence test found in Rule 13(a). Va. Sup. Ct. R. 1:6; *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135, 150 (2017); *see also Wilborn v. Halifax Cty. (Va.) Sch. Bd.*, ___ F. App'x ___, 2017 WL 1291203, at *1 (4th Cir. 2017) (per curiam) (affirming district court's dismissal of subsequent claims as barred by Virginia's *res judicata* rule, where subsequent claims "stem from the same transaction or occurrence" as prior claim). Indeed, after a party has received a final judgment on the merits of a claim, Rule 1:6 of the Rules of the Supreme Court of Virginia bars litigants from bringing "a subsequent civil action against the same opposing party or parties on any claim . . . that *arises from th[e] same conduct, transaction or occurrence*" as the original claim. Va. Sup. Ct. R. 1:6 (emphasis added). Plaintiffs' claims arise from the alleged duties that Defendants owe to defend or indemnify them in the Robinson Suit. By contrast, Defendants' claims arise from the Thomas Suit. Despite the similar relief sought — declarations that Defendants either have or do not have a duty to defend each underlying suit — they arise from entirely separate events.

Finally, no logical relationship exists between these two sets of claims to warrant adding nine additional entities that, based on the pleadings, have no connection to Plaintiffs' claims or to the forum state of Virginia. *Id.* The "logical relationship" inquiry overlaps with the "same evidence" inquiry in that the Court again looks to the proof of the various claims or defenses. *Sue & Sam Mfg. Co. v. B-L-S Constr. Co.*, 538 F.2d 1048, 1503 (4th Cir. 1976). As noted above, these coverage disputes involve distinct sets of evidence. No nexus exists to justify this Court entangling itself with underlying actions in different states, based on different contracts and different accidents that occurred at different facilities.

Further, WMI remains the only Plaintiff/Counter Defendant common to both the Amended Complaint and the Thomas Counts of the Counterclaim. Thomas sued each of the nine additional Counter Defendants in the negligence action that he filed in Baltimore City Circuit Court. (Countercl. ¶ 2(d)-(k); Thomas Compl. at 1-3.) Notably, he did not sue WMI. Nonetheless, Defendants name WMI as a Counter Defendant and the parent company of WMR (also not a party to the Thomas Suit, nor to the Counterclaim), the entity that entered into the TAC-WMR Contract. (Countercl. ¶ 2(c), at 17.) Defendants argue that WMI stands as their "only 'required' party opponent" in both coverage disputes, and they urge the Court to drop the three other Plaintiffs and nine Thomas Suit Defendants, all subsidiaries of WMI. (Defs.' Opp'n at 11.) Defendants' attempt to tie in these additional claims through a common parent company is unavailing. Rule 13(a) does not permit Defendants' attempt to introduce nine new parties, a new set of facts and a new contract into this case as compulsory counterclaims.

      c. Counts I-B, II-B, IV and V-B of the Counterclaim are permissive under Rule 13(b), subject to Rule 13(h) and the Court's discretion.

Rule 13(b) defines permissive counterclaims as "any claim that is not compulsory" that one party asserts against an opposing party. Fed. R. Civ. P. 13(b). Because Defendants also assert these counterclaims against WMI, and they are not compulsory, they necessarily constitute permissive counterclaims. However, when a counterclaimant seeks to join additional parties, Rules 19 and 20 govern that joinder. Fed. R. Civ. P. 13(h).

Defendants do not seek to add any required parties to the Counterclaim under Rule 19. In fact, through the Motion to Drop the Waste Management subsidiaries, Defendants refer to the nine additional Counter Defendants as "nominal," "unnecessary," "superfluous" and "at most formal additional parties." (Defs.' Mot. to Drop Br. at 1, 3.) Thus, the Court must examine

whether permissive joinder under Rule 20 warrants the addition of the nine additional Counter Defendants.

> 2. The Parties that Defendants Seek to Join in the Counterclaim Do Not Satisfy the Permissive Joinder Requirements of Rule 20.

Rule 20 allows parties to join defendants into an action if:

(A) [A]ny right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions of occurrences; and
(B) [A]ny question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2)(A)-(B). Courts in the Fourth Circuit construe Rule 20(a) "in light of its purpose . . . to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Tinsley v. Streich*, 143 F. Supp. 3d 450, 459 (W.D. Va. 2015) (quoting *Saval*, 710 F.2d at 1031). When considering permissive joinder of parties, trial courts enjoy great discretion. *Aleman*, 485 F.3d at 218 n.5 (citing *Saval*, 710 F.2d at 1031).

The arguments remain largely the same. Plaintiffs assert that the relief that Defendants seek against the nine new Counter Defendants does not arise from the same transaction(s) or occurrence(s) as the claims asserted by Plaintiffs. (Pls.' Mem. at 5-6.) Defendants respond by urging the Court to (1) interpret the transaction or occurrence test broadly enough to encompass both insurance coverage disputes based upon agreements between Waste Management affiliates and TAC, and (2) find the questions of law and fact in the Counterclaim virtually identical to those raised by the Amended Complaint. (Defs.' Opp'n at 10, 12-13.)

The nine additional Counter Defendants fail to satisfy the first requirement of permissive joinder and, thus, should not remain parties to this lawsuit. As detailed above, Counterclaim Counts I-B, II-B, IV, and V-B arise from a different transaction (the TAC-WMR Contract) and occurrence (the Thomas Suit and its underlying facts) than Plaintiffs' claims. These nine

Counter Defendants have no connection to the Amended Complaint or the events that gave rise to it. The only tie-in at all is WMI, an entity not subject to the Thomas Suit, through whom Defendants attempt to weave into this separate dispute. Thus, despite any commonality of issues, the claims against the additional Counter Defendants do not permit their joinder under Rule 20. To join these additional parties, and the claims asserted against them, would not promote convenience or expeditious resolution of the disputes. Instead, it would impede judicial efficiency to include these parties in one action and force the simultaneous litigation and analysis of two distinct sets of facts, underlying suits and contracts.

Because they do not meet the requirements of joinder, and consequently Rule 13(h) when parties asserts a counterclaim that also seeks to bring additional parties into the litigation, the Court recommends that Plaintiffs' Motion to Dismiss be GRANTED as to Counts I-B, II-B, IV and V-B, and that those Counts be DISMISSED WITHOUT PREJUDICE.

### B. Defendants' Motion to Dismiss the Underlying Claimant Parties.

Next, Defendants seek the dismissal of Mr. Robinson and Mr. Thomas from these coverage disputes, arguing that the two underlying plaintiffs lack standing or should otherwise be declared nominal parties. (Defs.' Underlying Claimants Mem. at 11-12, 18.) In response, Plaintiffs stipulated to the dismissal of Mr. Robinson. (Pls.' Brief in Opp'n to Defs.' Mot to Dismiss Waste Mgmt. Subsidiaries ("Pls.' Br. in Opp'n") (ECF No. 40) at at 7-8.)

The stipulation of dismissal, entered by the Court on May 1, 2017, renders this Motion moot as to Mr. Robinson. (ECF No. 43.) Further, as they acknowledge, Defendants did not name Mr. Thomas as a party to the Counterclaim. (Defs.' Underlying Claimants Mem. at 2.) Even if they had, the Court has recommended dismissal of all Counts of the Counterclaim that relate to Mr. Thomas, thus rendering moot the remainder of the Motion. Consequently, the

Court recommends that Defendants' Motion to Dismiss the Underlying Claimant Parties be DENIED as MOOT.

### C. Defendants' Motion to Drop.

Finally, Defendants ask the Court to exercise its discretion pursuant to Federal Rule of Civil Procedure 21 and drop the Waste Management subsidiaries or, alternatively, to declare them nominal or unnecessary parties. (Defs.' Mot. to Drop Br. 8-10.) They argue that WMI is the real party in interest and "can obtain full relief" for its subsidiaries without their presence in the litigation. (Defs.' Mot. to Drop Br. at 2, 8.) Plaintiffs respond by arguing that the WMI subsidiary Plaintiffs are named defendants in the Robinson Suit, with a clear interest in this coverage dispute, and that their presence does not destroy diversity. (Pls.' Br. in Opp'n at 2, 5.)

The Court's above recommendation to dismiss Counterclaim Counts I-B-, II-B, IV, and V-B resolves the Motion to Drop as to the nine Thomas Suit Defendants (BRESCO, WBLP, WBI, WBLLC, WMM, WMDSM, WMNS, WMS and WT). The Amended Complaint and the surviving counts of the Counterclaim do not name these nine entities as parties. Thus, as to these entities, the Court recommends that the Motion to Drop be DENIED as MOOT.

The remaining Waste Management subsidiaries, WMV, KGL and KGLP, remain exposed to liability in the Robinson Suit as individually named defendants. They, along with WMI, filed this action seeking a declaration that Defendants have a duty to defend them in, and/or indemnify them from, the Robinson Suit. Rule 21 permits courts, on a party's motion or *sua sponte*, to add or drop misjoined parties on just terms. Fed. R. Civ. P. 21. However, courts exercise their discretion under Rule 21 sparingly, in light of the aims of the Rules to promote fairness, trial convenience and the efficient administration of justice. *Tinsley*, 143 F. Supp. 3d at

462-63 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) and citing *Newman-Green Inc. v. Alfonzo-Lorrain*, 490 U.S. 826, 838 (1989)).

The presence of WMV, KGL and KGLP does not destroy diversity of citizenship which would threaten the Court's subject matter jurisdiction. Nor does their presence create any unfairness or inconvenience toward Defendants, and they have argued none. Defendants' arguments for dropping these three Plaintiffs rely on cases in which courts dropped either non-diverse parties to retain jurisdiction or insured parties based on subrogation rights. The Amended Complaint presents neither circumstance. Instead, as Defendants note, Robinson sued all Plaintiffs in Virginia state court, and "the WMI subsidiary parties here are potential additional insureds" under Defendants' policies. (Defs.' Mot. to Drop Br. at 3, 9.) Finding no reason to drop WMV, KGL or KGLP from this action, the Court recommends that Defendants' Motion to Drop be DENIED as to those Plaintiffs.

## IV. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiffs' Motion to Dismiss (ECF No. 20) be DENIED as to Counterclaim Counts I-A, II-A, III and V-A, and GRANTED as to Counterclaim Counts I-B, II-B, IV and V-B, that Defendants' Motion to Dismiss Underlying Claimant Parties (ECF No. 28) be DENIED as MOOT, that Defendants' Motion to Drop (ECF No. 29) be DENIED, and that Defendants' Motion to Strike (ECF No. 37) be GRANTED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge M. Hannah Lauck and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within**

17

fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

                                                                 /s/

                                            David J. Novak
                                     United States Magistrate Judge

Richmond, Virginia
Date: June 29, 2017