# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

WASTE MANAGEMENT,
INC., *et al.*,

      **Plaintiffs,**

v.                                                       Civil Action No. 3:17cv60

GREAT DIVIDE INSURANCE
COMPANY, *et al.*,

      **Defendants.**

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on five motions:

1. Plaintiffs Waste Management, Inc., Waste Management of Virginia, Inc., King George Landfill, Inc., and King George Landfill Properties, LLC's (collectively, the "Waste Management Plaintiffs" or the "WM Plaintiffs") Cross-Motion for Summary Judgment on the Duty to Defend of Defendants Great Divide Insurance Company and Nautilus Insurance Company (the "Waste Management Plaintiffs' Motion for Summary Judgment"), (ECF No. 69);

2. Defendants Great Divide Insurance Company ("Great Divide") and Nautilus Insurance Company's ("Nautilus," and, collectively with Great Divide, the "Insurance Company Defendants") Motion for Summary Judgment (the "Insurance Company Defendants' Motion for Summary Judgment"), (ECF No. 71);

3. The Insurance Company Defendants' "Motion for Entry of Order Permitting the Insurer Defendants to File Under Seal Exhibit H to Their Opposition to Plaintiffs' Summary Judgment Motion" (the "Motion to Seal"), (ECF No. 75);

4. The Waste Management Plaintiffs' "Motion to Strike Reference to and Reliance Upon Extrinsic Evidence in Defendant's Summary Judgment Motion and Opposition Brief" (the "Motion to Strike Extrinsic Evidence"), (ECF No. 78); and,

5. The Waste Management Plaintiffs' "Motion to Strike Defendants' Reply to Plaintiffs' Summary Judgment Opposition Brief" (the "Motion to Strike Reply"),[1] (ECF No. 82).

The Waste Management Plaintiffs and the Insurance Company Defendants filed Cross Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.[2] The Waste Management Plaintiffs and the Insurance Company Defendants have responded to the Cross Motions. (ECF Nos. 73, 74.) The Waste Management Plaintiffs did not respond to the Insurance Company Defendants' Motion to Seal and the time to do so has expired. The Insurance Company Defendants responded to the Motion to Strike Extrinsic Evidence and the Motion to Strike Reply, (ECF Nos. 84, 86), and the Waste Management Plaintiffs replied, (ECF Nos. 87, 88).

---

[1] On May 31, 2018, the Insurance Company Defendants—without seeking leave to do so—filed a reply to the Waste Management Plaintiffs' opposition to the Insurance Company Defendants' Motion for Summary Judgment. (ECF No. 80.) The Waste Management Plaintiffs promptly filed the Motion to Strike Reply, asserting that the Court had not permitted reply briefs, either in its instructions at the Initial Pretrial Conference (the "IPTC"), or in its Initial Pretrial Order (the "IPTO"). (ECF No. 82.) The Insurance Company Defendants opposed the Motion to Strike Reply, (ECF No. 84), and the Waste Management Plaintiffs replied, (ECF No. 88).

During the December 1, 2018 IPTC, the Court confirmed that "with cross motions, I would schedule . . . a May 3 due date, and then 20 days after that would be cross responses, *and then that's it as far as briefing.*" (Initial Pretrial Conf. Tr. 7 (emphasis added).) Consonant with the Court's statement during the IPTC, the IPTO allowed only the filing of response briefs, not reply briefs. (*See* Initial Pretrial Order 5, ECF No. 61.)

Based on the Court's instructions at the IPTC and as set forth in the IPTO, the Court will grant the Motion to Strike Reply, (ECF No. 82). The Court will disregard any arguments raised in the Insurance Company Defendants' Reply Brief.

[2] Federal Rule of Civil Procedure 56(a) provides, in pertinent part:

(a) **Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1332.[3] For the reasons stated below, the Court will grant the Insurance Company Defendants' Motion for Summary Judgment and deny the Waste Management Plaintiffs' Motion for Summary Judgment.

## I. Factual Background[4] and Federal Court Procedural History

The Waste Management Plaintiffs filed their Amended Complaint seeking a declaration that the Insurance Company Defendants must provide them with a defense in an ongoing litigation filed in the Circuit Court of King George County (the "Underlying Litigation") and asserting breach of contract claims based on the Insurance Company Defendants' refusal to provide such a defense. Because the outcome of the Motions pending before the Court turn on the allegations in the Underlying Litigation, the Court will first introduce that litigation. After discussing the procedural history in this Court, the Court will evaluate the contract provisions upon which the Waste Management Plaintiffs base their claims of a duty to defend.

---

[3] "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332. No party disputes diversity jurisdiction, nor could they.

[4] In recounting the factual history, the Court relates the undisputed facts as articulated in the parties' briefing on both motions for summary judgment. In ruling on each motion, the Court will view the undisputed facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In this section, however, the Court merely sets forth the undisputed facts.

A. **The Underlying Litigation**[5]

On October 18, 2011, Arthur Robinson suffered injuries from an accident at the King George Landfill (the "Landfill") in Virginia. At the time, Robinson worked for (the now defunct) TAC Transport, LLC ("TAC Transport") as a commercial garbage truck driver.

On the day of the accident, Robinson drove a TAC Transport trailer to the Landfill to dispose of garbage. The Landfill provided equipment to commercial drivers, including a "tipper device" in order to raise, tip, and lower trailers to unload garbage. (Am. Compl. ¶ 13, ECF No. 6; Am. Compl. Ex. A "Underlying Litig. Compl." ¶ 11, ECF No. 6-1.)

The plaintiff in the underlying case alleges that, while Robinson waited in line to dump the contents of his trailer, the tipper malfunctioned when operating with the trailer ahead of Robinson, driven by Earl Kennedy. Robinson claims that nearby Landfill employees should have assisted Kennedy, but they did not. Instead, Kennedy—also a TAC Transport employee— asked for Robinson's help to manually close the rear door of Kennedy's trailer. Robinson obliged.

To assist in trying to free the lodged rear door, Robinson climbed onto the Landfill's tipping platform. Once on the platform, Robinson assisted Kennedy and two other unidentified

---

[5] The Waste Management Plaintiffs filed a Motion to Strike Extrinsic Evidence proffered by the Insurance Company Defendants as part of their Motion for Summary Judgment. The Waste Management Plaintiffs, however, moved to strike only a portion of the documents from the Underlying Litigation that the Insurance Company Defendants submitted.

No party disputes reference to, during summary judgment briefing, the relevant insurance contracts, a Transportation Agreement (discussed in detail below), or the complaints Robinson filed in the King George County Circuit Court. Nor do they dispute using the deposition transcripts of Kennedy and Robinson from the Circuit Court case. The Court properly considers these undisputed documents when evaluating these cross-motions for summary judgment.

The parties disagree, however, about whether the Court may consider additional discovery documents, including the Insurance Company Defendants' reference to the depositions of other TAC Transport employees, during summary judgment. The Court will address, *infra* note 17, the Waste Management Plaintiffs' Motion to Strike those disputed documents.

4

people in "us[ing] a wooden 2x4 to apply pressure to the door in an attempt to lift it." (Mem. Supp. Pls. Mot. Summ. J. ¶ 11, ECF No. 72.) Robinson testified during the Underlying Litigation that "Kennedy gave Robinson 'the okay that it was okay to go ahead and'" assist in trying to free the door. (*Id.* (quoting Mem. Supp. Pls. Mot. Summ. J. Ex. A "Robinson Depo." 150–54, ECF No. 72-1).) Robinson also testified that "[t]hen just when the door came free, I slipped and went off—went off the back." (*Id.* (quoting Robinson Depo. 165).) Robinson fell backward off the Landfill's tipper, landing on the ground fifteen to twenty feet below, and sustaining serious injuries. Although Robinson described his fall off the Landfill's tipper as due to a slip, he testified that he had "no idea" what he slipped on. (Robinson Dep. 167–68.) He noted that he "didn't see any problems with the tipper" on the day of his fall. (*Id.* 168.)

On October 4, 2013, Robinson filed the complaint in the King George County Circuit Court, alleging one count of negligence each against Waste Management, Inc., Waste Management of Virginia, Inc., King George Landfill, Inc., and King George Landfill Properties, LLC,[6] as entities that "owned, operated, managed and/or w[ere] responsible for the Landfill." (Am. Compl. ¶ 17; Underlying Litig. Compl. ¶¶ 4–7, 23–46.) In the Underlying Litigation, Robinson contends that the Waste Management Plaintiffs' negligent actions caused him to fall from the Landfill's tipper, which resulted in his injuries. Robinson seeks $10,000,000 in damages jointly and severally from those four entities. Robinson did not include any claim against TAC Transport in the Underlying Litigation.

In this case, the WM Plaintiffs seek representation from the Insurance Company Defendants for the Waste Management Plaintiffs' defense in the Underlying Litigation. They

---

[6] The four entities Robinson brought suit against in the Underlying Litigation now serve as the Waste Management Plaintiffs in the litigation before this Court.

assert three contractual bases for the duty to defend, the first of which is a service agreement, while the other two are insurance contracts. First, the Waste Management Plaintiffs cite a transportation service agreement between TAC Transport and Waste Management of Maryland, Inc. (the "Transportation Agreement"). The Waste Management Plaintiffs claim the Transportation Agreement would obligate TAC Transport, as Robinson's employer, to defend them in the Underlying Litigation because TAC Transport's negligence caused Robinson's injuries.[7] Second, the WM Plaintiffs contend that the duty to defend arises under a Commercial General Liability Policy (the "CGL" Policy) between TAC Transport and Great Divide. Finally, the Waste Management Plaintiffs contend a duty to defend arises under a Business Auto Policy (the "BA Policy") between TAC Transport and Great Divide.[8] In Section III below, the Court will discuss seriatim the Waste Management Plaintiffs' arguments for seeking defense costs under the Transportation Agreement, the CGL Policy, and the BA Policy.

---

[7] On May 1, 2011, TAC Transport agreed to provide transportation services to Waste Management of Maryland, Inc., pursuant to the terms of the Transportation Agreement. The terms of the Transportation Agreement require TAC Transport to maintain certain types of insurance coverage, including commercial general liability insurance and automobile liability insurance.

The WM Plaintiffs add, without contravention, that "Waste Management, Inc. is the ultimate parent company of Waste Management of Virginia, Inc. and Waste Management of Maryland, Inc." (Mem. Supp. Pls. Mot. Summ. J. Ex. F "Tippy Decl." ¶ 3, ECF No. 72-6.) The Waste Management Plaintiffs seek defense costs under the Transportation Agreement because all corporate entities here constitute a parent or affiliate of Waste Management of Maryland, Inc. The Insurance Company Defendants do not oppose coverage based on WM's corporate structure.

[8] TAC Transport obtained the CGL Policy and the BA Policy from Great Divide.

**B.    Procedural History Before This Court**

The Waste Management Plaintiffs filed their Complaint in this Court asserting six claims against the Insurance Company Defendants and Arthur Robinson.[9]  (*See generally* Compl., ECF No. 1.)  While these six claims pertain to three insurance contracts,[10] only two of the insurance contracts are relevant to the Court's analysis of the current cross-motions.[11]  On February 14, 2017, the Waste Management Plaintiffs filed their Amended Complaint asserting the same six claims against the Insurance Company Defendants and Robinson.  (*See generally* Am. Compl., ECF No. 6.)  On March 13, 2017, after an extension of time, the Insurance Company Defendants filed an answer and counterclaim.  (ECF No. 15.)  With the Court's permission, on April 13, 2017, the Insurance Company Defendants filed their Corrected Answer to the Amended Complaint and Counterclaim.  (ECF No. 24.)

On April 18, 2017, the Court referred several motions[12] to the Honorable David J. Novak, United States Magistrate Judge, for Report and Recommendation, including the Waste

---

[9] On May 1, 2017, the Court entered a stipulation of dismissal of Robinson from this action.  (ECF No. 43.)

[10] The parties correctly agree that because the Underlying Litigation still pends before the King George County Circuit Court, the Court cannot properly decide the scope of the Insurance Company Defendants' duty to indemnify, rather than defend, the Waste Management Plaintiffs.

[11] In addition to their claims pertaining to the CGL Policy and the BA Policy, the Waste Management Plaintiffs also brought a claim seeking a declaration of their rights and a breach of contract claim pertaining to TAC Transport's additional insurance policy with Nautilus, an Excess Insurance Policy.  The parties agreed, and the Court further ordered, that the Excess Insurance Policy that Nautilus issued to TAC "is not relevant to the duty to defend." (May 1, 2018 Order 6, ECF No. 68.)  The two counts pertaining to the Excess Insurance Policy do not affect the Court's analysis.

[12] The Court initially referred Robinson's Motion to Dismiss, (ECF No. 8), and Robinson's Motion to Voluntarily Dismiss, (ECF No. 10), to Magistrate Judge Novak.  Because, on May 1, 2017, the Court entered a Stipulation of Dismissal eliminating Robinson from this suit, the Court denied these motions as moot.  (ECF No. 44.)

Management Plaintiffs' Motion to Dismiss Counterclaims, (ECF No. 20). (ECF No. 27.) On April 21, 2017, the Court also referred the Insurance Company Defendants' Motion to Dismiss Underlying Claimant Parties for Lack of Standing, (ECF No. 28), and Motion to Drop the Waste Management Subsidiaries as Parties Hereto or Declare Them to be Nominal or Otherwise Unnecessary Parties, (ECF No. 29), to the Magistrate Judge for Report and Recommendation. (ECF No. 34.) Additionally, on May 1, 2017, the Court referred the Insurance Company Defendants' Motion to Strike, (ECF No. 37), to the Magistrate Judge for consideration and incorporation into his Report and Recommendation. (ECF No. 41.)

On June 30, 2017, the Magistrate Judge filed his Report and Recommendation (the "R&R"). (ECF No. 50.) In the R&R, Magistrate Judge Novak recommended that

> Plaintiffs' Motion to Dismiss (ECF No. 20) be DENIED as to Counterclaim Counts I-A, II-A, III and V-A, and GRANTED as to Counterclaim Counts I-B, II-B, IV and V-B, that Defendants' Motion to Dismiss Underlying Claimant Parties (ECF No. 28) be DENIED as MOOT, that Defendants' Motion to Drop (ECF No. 29) be DENIED, and that Defendants' Motion to Strike (ECF No. 37) be GRANTED.

(R&R 17, ECF No. 50.) The Magistrate Judge notified the parties that they had 14 days to file an objection to the R&R.

On July 14, 2017, the Insurance Company Defendants filed objections, citing numerous issues with the R&R. (*See* ECF No. 52.) On October 3, 2017, the Court overruled the Insurance Company Defendants' objections and adopted the findings and recommendations in the R&R. (*See* Oct. 3, 2017 Order, ECF No. 54.) In that same October 3, 2017 Order, the Court instructed the Insurance Company Defendants to file an Amended Answer and Counterclaim that complied with the R&R's findings.

On October 9, 2017, the Insurance Company Defendants filed their Amended Answer. (ECF No. 55.) In their Amended Answer, the Insurance Company Defendants assert that the

insurance contracts do not create a duty to defend or to indemnify. In their Counterclaim, the Insurance Company Defendants also seek a declaration that no duty to defend or indemnify exists under the CGL Policy, the BA Policy, or the Excess Policy. On October 16, 2017, the Waste Management Plaintiffs filed an Answer to the Insurance Company Defendants' Counterclaim. (ECF No. 56.)

On December 1, 2017, the Court held an initial pretrial conference with all parties. In the Initial Pretrial Order, issued on December 5, 2017, the Court ordered that all dispositive motions be filed no later than May 3, 2018, and responses to those motions be filed no later than 20 days after the dispositive motion was filed. (Dec. 5, 2017 Order 5, ECF No. 61.)

On May 1, 2018, the Court entered an Order clarifying the scope of briefing for summary judgment and granting the parties additional time, until May 7, 2018, to file their summary judgment motions. (ECF No. 68.) The Insurance Company Defendants and the Waste Management Plaintiffs filed their Motions for Summary Judgment. Each party filed its response to the opposing party's Motion for Summary Judgment.[13] This matter is now ripe for disposition.

## II. Applicable Legal Standards

### A. Standard of Review: Motions for Summary Judgment

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Liberty Lobby*, 477 U.S. at

---

[13] As noted above, the Court does not consider any aspect of the Reply proffered by the Insurance Company Defendants. *See supra* note 1.

248–50. "The interpretation of an insurance policy is a question of law that is particularly well suited for summary judgment." *Minn. Lawyers Mut. Ins. Co. v. Protostorm LLC*, 197 F. Supp. 3d 876, 882 (E.D. Va. 2016) (citing *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 826 F. Supp. 155, 157 (E.D. Va. 1993), *aff'd*, 48 F.3d 778 (4th Cir. 1995)).

"A fact is material if the existence or non-existence thereof could lead a jury to different resolutions of the case." *Thomas v. FTS USA, LLC*, No. 3:13cv825, 2016 WL3653878, *4 (E.D. Va. June 30, 2016) (citing *Liberty Lobby*, 477 U.S. at 248). Once a party has properly filed evidence supporting its motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24. The parties must present these in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his [or her] evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

In the end, the non-moving party must do more than present a scintilla of evidence in its favor.

> Rather, the non-moving party must present sufficient evidence such that reasonable jurors could find by a preponderance of the evidence for the non-movant, for an apparent dispute is not genuine within contemplation of the summary judgment rule unless the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find the facts in his [or her] favor.

*Sylvia Dev. Corp.*, 48 F.3d at 818 (internal quotations, citations, and alterations omitted). The ultimate inquiry in examining a motion for summary judgment is whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted). Where the court is faced with cross-motions for summary judgment, as in the instant case, the court must review each motion separately on its own merits. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).

## B.    Contract Interpretation Under Maryland Law

The parties properly agree that the Court must analyze the insurance policies pursuant to Maryland contract law. *See Klein v. Verizon Commc'ns, Inc.*, 674 Fed. App'x 304, 307–08 (4th Cir. 2017) (finding that a federal court sitting in diversity must apply the choice-of-law provisions of the state in which it sits, and that under Virginia law "lex loci contractus[14] [or the law of the place of the contract] serves as the default rule . . . [h]owever, choice of law contractual provisions are an exception to that general rule"); *Buchanan v. Doe*, 246 Va. 67, 70–71 (1993) (finding that under Virginia state law, "the law of the place where an insurance

---

[14] Under Virginia law "choice of law contractual provisions are an exception to" the general rule of lex loci contractus. *Klein*, 674 Fed. Appx. at 308. "[M]ore importantly, [Virginia law] gives [choice of law provisions] effect." *Id.* Here, the Transportation Agreement contains a choice of law provision, which states "[t]his Agreement shall be governed by and interpreted in accordance with the laws of the State of Maryland." (Transp. Agreement 5.)
    Applying lex loci contractus to the CGL Policy and the BA Policy and the choice of law exception to the Transportation Agreement, the Court properly applies Maryland contract law to each of the three contracts at issue in this matter.

contract is written and delivered controls issues as to its coverage").[15] (Mem. Supp. Defs. Mot. Summ. J. 15; Mem. Supp. Pls. Mot. Summ. J. 10.)

"[U]nlike the majority of other states, Maryland does not follow the rule that insurance polices are to be most strongly construed against the insurer." *Capital City Real Estate, LLC v. Certain Underwriters at Lloyd's London*, 788 F.3d 375, 379 (4th Cir. 2015) (quoting *Empire Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 117 Md. App. 72 (1997)). Rather, under Maryland law, "[i]n interpreting the provisions of an insurance policy, [a court] . . . rel[ies] on the same principles that [it] . . . appli[es] to traditional contracts." *White Pine Ins. Co. v. Taylor*, 233 Md. App. 479, 498 (Md. Ct. Spec. App. 2017) (citing *Bailer v. Erie Ins. Exch.*, 344 Md. 515, 521 (2000)); *Capital City*, 788 F.3d at 379 ("Maryland law applies ordinary contract principles to insurance contracts").

Maryland follows the objective interpretation of contracts. *Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 8 (2014). Under this process, a court must

> determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.

*Id.* (quoting *Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985)). "[I]f an insurance policy is ambiguous, it will be construed liberally in favor of the insured and against the insurer *as drafter of the instrument*." *Capital City*, 788 F.3d at 379 (quoting *Empire Fire & Marine Ins. Co.*, 117 Md. App. 72) (emphasis in original).

---

[15] The Insurance Company Defendants state, without opposition, that "the insurance polic[ies] w[ere] delivered and the premiums were paid" in Maryland. (*See* Mem. Supp. Defs. Mot. Summ. J. 15; Mem. Supp. Pls. Mot. Summ. J. 10.)

The United States Court of Appeals for the Fourth Circuit has recognized that a court's "primary task in interpreting an insurance policy, as with any contract, is to apply the terms of the contract itself." *Pa. Nat'l Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 112 (4th Cir. 2012) (quoting *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298 (2000)). To this end, a court "must 'look first to the contract language employed by the parties to determine the scope and limitations of the insurance coverage.'" *Id.* (quoting *Cole*, 359 Md. 298). A court applying Maryland contract law "give[s] the words of the contract their ordinary and accepted meaning, looking to the intention of the parties from the instrument as a whole." *White Pine Ins. Co.*, 233 Md. App. at 498 (quoting *Phila. Indem. Ins. Co. v. Md. Yacht Club, Inc.*, 129 Md. App. 455, 467–68 (1999)). "A contract must be construed as a whole, and effect given to every clause and phrase, so as not to omit an important part of the agreement." *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 113 Md. App. 540, 554 (Md. Ct. Spec. App. 1997).

A court reviewing an insurance contract under Maryland law must consider the entire agreement, but because "'exclusions are designed to limit or avoid liability,' limitations on coverage must be construed strictly and narrowly and 'in favor of a finding of coverage.'" *White Pine Ins. Co.*, 233 Md. App. at 500 (quoting *Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633, 656 (2002)). The insurer "must draft the language of an exclusion 'conspicuously, plainly and clearly' and 'clearly set forth' any limitation on coverage to the insured." *Id.* (quoting *Megonnell*, 368 Md. at 656.) "[I]n all cases, the insurer bears the burden of showing that an exclusion applies." *Cornerstone Title & Escrow, Inc. v. Evanston Ins. Co.*, 555 Fed. App'x 230, 235 (4th Cir. 2014).

**C.**     <u>The Duty to Defend Under Maryland Contract Law</u>

Under Maryland law, an insurer's duty to defend an insured "is 'broader than the duty to indemnify.'" *Cowan Sys., Inc. v. Harleysville Mut. Ins. Co.*, 457 F.3d 368, 372 (4th Cir. 2006) (quoting *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217 (1997)). Maryland state courts clarify that "[a]n insurance company has a duty to defend its insured for all claims that are potentially covered under the policy." *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 15 (2004) (citing *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 408 (1975)). As the Fourth Circuit has recognized "[e]ven a slim possibility can constitute a 'potentiality.'" *Cornerstone*, 555 Fed. App'x at 234 (comparing *Walk*, 382 Md. 1, with *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217 (1997)). Indeed, Maryland courts expand on this precept when observing that "by its contract, the insurer is obligated to provide a defense to a covered claim, even if the claim will ultimately fail." *Baltimore Gas & Elec. Co.*, 113 Md. App. at 574. However, "[t]he insurer is not obligated to provide a defense to a suit that does not assert a covered claim." *Id.* If a court finds that a duty to defend exists over a part of the case, then the insurer must provide a defense to the entire case. *Cornerstone*, 555 Fed. App'x at 235–36 (citing *Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 448 F.3d 252, 258 (4th Cir. 2006)).

To determine whether a duty to defend exists under Maryland law, a court undertakes a two-part inquiry. *See Capital City*, 788 F.3d at 379 (quoting *St. Paul Fire & Marine Ins. Co.*, 292 Md. 187). First, the Court asks "what is the coverage and what are the defenses under the terms and requirements of the insurance policy?" *Id.* Second, the Court must inquire whether "the allegations in the tort action potentially bring the tort claim within the policy's coverage?" *Id.* "The first question focuses upon the language and requirements of the policy, and the second question focuses on the allegations of the tort suit. At times these two questions involve separate

and distinct matters, and at other times they are intertwined, perhaps involving an identical issue." *Id.* If any doubt exists regarding the availability of a defense, it must be resolved in favor of the insured. *Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 107 (1995) (citing *U.S.F. & G. v. Nat. Pav. Co.*, 228 Md. 40 (1962)).

An *insured*, but not an *insurer*, can rely on extrinsic evidence to establish a potentiality of coverage. *Cochran*, 337 Md. at 111–12. In setting this standard, the *Cochran* court noted

> that an insured cannot assert a frivolous defense merely to establish a duty to defend on the part of his insurer. Only if an insured demonstrates that there is a reasonable potential that the issue triggering coverage will be generated at trial can evidence to support the insured's assertion be used to establish a potentiality of coverage under an insurance policy.

*Id.* at 112. Indeed, courts in Maryland have clarified that the extrinsic evidence produced by the insured "must . . . relate in some manner to a cause of action actually alleged in the complaint and cannot be used by the insured to create a new, unasserted claim that would create a duty to defend." *Reames v. State Farm Fire & Cas. Ins.*, 111 Md. App. 546, 561 (Md. Ct. Spec. App. 1996). As such, "[u]nasserted causes of action that could potentially have been supported by the factual allegations or the extrinsic evidence cannot form the basis of a duty to defend because they do not demonstrate 'a reasonable potential that the issue triggering coverage will be generated at trial.'" *Id.* (citing *Cochran*, 337 Md. at 112).

### III. Analysis

With this full context presented, the Court now addresses the Motions before it. Because the Court would reach the same result regardless of which party held the inference under Rule 56,[16] the Court will discuss the Cross-Motions for Summary Judgment together. Looking to the

---

[16] When a Court decides a motion for summary judgment brought under Rule 56, the Court must view the record as a whole and in the light most favorable to the nonmoving party. *See Celotex Corp.*, 477 U.S. at 322–24; *Liberty Lobby*, 477 U.S. at 248–50.

contracts at issue, and the circumstances surrounding them, the Court concludes that no duty to

defend exists under the terms of the Transportation Agreement, the CGL Policy, or the BA

Policy.[17] Despite the fact that the analysis flows from different provisions in the three contracts,

no duty to defend as to the WM Plaintiffs exists for the same reason: Robinson did not, and

likely could not, seek to hold the *Waste Management Plaintiffs* liable for *TAC Transport's*

---

[17] In addition to the items discussed *supra* note 5, the Insurance Company Defendants proffered copies of Robinson's "Answers to Defendant King George Landfill, Inc.'s Interrogatories," (ECF No. 70-6), Robinson's "Expert Designation," (ECF No. 70-7), and the Waste Management Plaintiffs' "First Supplemental Answers to Defendant/Counterplaintiffs' First Set of Interrogatories," (ECF No. 81), from the Underlying Litigation to support their Motion for Summary Judgment. The Insurance Company Defendants also sought to rely on "Depositions of former TAC employees Arthur Robinson, Earl Kennedy, Ron Hall, Joseph Offeh, Ron Adolph, Syreeta Knight, London Bryson, and/or Robert Manago (as may be cited by [the Waste Management Plaintiffs' Motion for Summary Judgment] papers)." (Mem. Supp. Defs. Mot. Summ. J. 7.) Besides the Robinson and Kennedy depositions, neither the Insurance Company Defendants nor the WM Plaintiffs attached copies of these depositions. As noted *supra* note 5, the WM Plaintiffs do not oppose the Insurance Company Defendants using Robinson and Kennedy's depositions, which the WM Plaintiffs attach as exhibits to their Memorandum in Support of their Motion for Summary Judgment. However, also as noted above, the Waste Management Plaintiffs oppose the Court relying on the additional discovery documents from the King George County Circuit Court case.

In doing so, the Waste Management Plaintiffs rely on the rule established in *Cochran* finding that, under Maryland law an *insurer*, but not an *insured*, must constrain its arguments to the language of the insurance contracts (here the Transportation Agreement, the CGL Policy, and the BA Policy), and the complaint filed in the underlying tort litigation (here the two complaints filed by Robinson), when addressing the duty to defend. *Cochran*, 337 Md. at 111–12. In contrast, the *insured* can rely on extrinsic evidence. *Id.* Applying Maryland law, the Fourth Circuit recently recognized this rule and struck an *insurer's* reliance on extrinsic evidence when the insurer sought to use the evidence to establish the "scope of [the] duty to defend." *Gemini Ins. Co. v. Earth Treks, Inc.,* 260 F. Supp. 3d 467, 479–80 (4th Cir. 2017).

Because the Insurance Company Defendants, as *insurers*, seek to rely on additional extrinsic evidence in contravention of the rule established in *Cochran*, the Court grants the Motion to Strike Extrinsic Evidence as to the additional discovery materials but deems moot the Motion to Strike Extrinsic Evidence as to the Robinson and Kennedy depositions. (ECF No. 78.) The Court will not consider the Insurance Company Defendants' reliance on materials beyond the Transportation Agreement, the CGL Policy, the BA Policy, the complaints filed by Robinson, and Robinson and Kennedy's depositions, which the Waste Management Plaintiffs concede the Insurance Company Defendants may rely upon.

negligence in the Underlying Litigation. Applying Maryland contract law principles, the Court addresses each contract in turn.[18]

### A. The Transportation Agreement Does Not Give Rise to a Duty to Defend Because Robinson Does Not Allege Any Claim of Negligence by TAC Transport in the Underlying Litigation

#### 1. The Transportation Agreement

The Transportation Agreement governs the business relationship between TAC Transport and Waste Management of Maryland, Inc. Under the terms of the contract, TAC Transport agreed to transport waste for Waste Management of Maryland, Inc. The Transportation Agreement's terms refer to TAC Transport as the CARRIER and Waste Management of Maryland as the COMPANY.

The Transportation Agreement provides that it "shall be governed by and interpreted in accordance with the laws of the State of Maryland." (Mem. Supp. Defs. Mot. Summ. J. Ex. D "Transp. Agreement" 5, ECF No. 70-4.) Additionally, it provides that "[i]t is understood by the parties hereto that the CARRIER and its employees, agents and subcontractors are not the agents or employees of the COMPANY, but an independent contract carrier[]." (*Id.* 8.)

Under the terms of the Transportation Agreement, TAC Transport agreed to "maintain, at its sole cost" certain types of insurance,[19] including:

---

[18] The Insurance Company Defendants also ask the Court to seal Exhibit H: the Waste Management Plaintiffs' First Supplemental Answers to Defendant/Counterplaintiffs' First Set of Interrogatories, which the Court has stricken, *see supra* note 17. In support of the Motion to Seal, the Insurance Company Defendants claim that the parties agreed to the entry of a protective order in this matter that would cover Exhibit H. (Mem. Supp. Mot. Seal ¶ 2, ECF No. 76.) The Waste Management Plaintiffs did not respond to the Motion to Seal and the time to do so has expired. For good cause shown, the Court grants the Motion to Seal and orders the Clerk to file Exhibit H under seal, but then strike it from the record, *supra* note 17. (ECF No. 75.)

[19] The Transportation Agreement also required TAC Transport to obtain "Workers' Compensation Insurance" and "Employers' Liability Insurance." (Transp. Agreement 9.) The Court need not examine these two insurance policies to decide the dispute before it.

(c) Commercial General Liability Insurance including products, completed operations, property damage and bodily injury coverage, with limits of not less than $2,000,000 per occurrence and $2,000,000 annual aggregate;

(d) Automobile Liability Insurance[] including all autos, non-owned and hired vehicle coverage with limits of liability of not less than $2,000,000 per occurrence. Coverage may be composed entirely of primary insurance or at least $1 million of primary insurance and the remainder in umbrella coverage[;]

(*Id.* 9.) The Transportation Agreement also requires that "[i]n addition to all the other risks for which coverage is provided in [the insurance section of the contract], the Commercial General Liability Insurance shall cover the contractual liability assumed under [the indemnification section of the contract]." (*Id.*) Waste Management of Maryland, Inc. also required as a part of the Transportation Agreement that "COMPANY and COMPANY'S 'parents, affiliates and subsidiaries' shall be added as additional insureds on a Primary basis to all required liability insurance polices required of CARRIER . . . and all required insurance policies." (*Id.*)

This case focuses on the indemnity provision of the Transportation Agreement. In this section, Waste Management of Maryland, Inc. and TAC Transport agreed to indemnify each other for damages arising from each party's own negligence. Specifically, the Transportation Agreement stated:

A . . . COMPANY also hereby expressly agrees to indemnify, defend and hold harmless CARRIER, its subsidiaries and affiliates . . . from and against any and all [d]amages arising and resulting from CARRIER acting in accordance with any express directions given to it by COMPANY or specific requests made to it by COMPANY to the extent any such directions or requests are not expressly contemplated by th[e Transportation] Agreement or violate the terms of COMPANY's contract or agreement with any other party, except to the extent such [d]amages arise from CARRIER's negligence or willful misconduct, in which case the requirements of Section 16.B, below, shall apply.

B. CARRIER also hereby expressly agrees to indemnify, defend and hold harmless COMPANY, its subsidiaries and affiliates and their respective officers, directors and employees, from and against any damages arising out of or resulting from any personal injury, death, or property damage caused by CARRIER's negligence and suffered by any person (including employees and persons deemed by operation of

law or contract to be an employee), agent . . . of CARRIER while at the Origin or Destination Locations or suffered in connection with, or related to or arising from, CARRIER's performance of the [s]ervices; except to the extent any such personal injury . . . is caused by the willful misconduct or negligence of COMPANY or any other Indemnified Party.

(*Id.* 10–11.)

2.      **The Absence of Any Negligence Claim Against *TAC Transport* in the Underlying Litigation Precludes Any Duty to Defend Under the Transportation Agreement**

Employing the two-step inquiry developed by Maryland courts, the Court finds that no duty to defend exists under the terms of the Transportation Agreement. Giving the words of the contract their plain meaning, the Transportation Agreement does not require TAC Transport "to indemnify, defend and hold harmless [Waste Management of Maryland, Inc], its subsidiaries and affiliates." (Transp. Agreement 11.) This outcome results because no evidence in the Underlying Litigation will decide the issue of whether *TAC Transport's* negligence contributed to Robinson's injury. Robinson did not sue TAC Transport, even under a theory of vicarious liability, in the Underlying Litigation.

Under Maryland law, the Court must first determine: "[W]hat is the coverage and what are the defenses under the terms and requirements of the insurance policy?" *Capital City*, 788 F.3d at 379 (quoting *St. Paul Fire & Marine Ins. Co.*, 292 Md. 187). This inquiry "focuses upon the language and requirements of the policy." *Id.* Maryland requires a Court to "give the words of the contract their ordinary and accepted meaning." *White Pine Ins. Co.*, 233 Md. App. at 498.

Here, the Transportation Agreement states that TAC Transport

hereby expressly agrees to indemnify, defend and hold harmless [Waste Management of Maryland, Inc.], its subsidiaries and affiliates . . . from and against any damages arising out of or resulting from personal injury . . . caused by [TAC Transport's] negligence and suffered by any person (including employees. . . ) . . . of [TAC Transport] while at the Origin or Destination

19

> Locations . . . except to the extent any such personal injury . . . is caused by the willfull misconduct or negligence of [Waste Management of Maryland, Inc.].

(Transp. Agreement 11.)  Under the plain language of this provision, TAC Transport agrees to defend Waste Management of Maryland, Inc. for all damages arising out of *TAC Transport's* negligence.  The provision does not require TAC Transport to defend Waste Management of Maryland, Inc. for damages arising out of *Waste Management of Maryland, Inc.'s* own negligence.

With the scope of the Transportation Agreement's coverage determined, the Court now turns to the second inquiry, which requires the Court to ask:  "[D]o the allegations in the tort action potentially bring the tort claim within the policy's coverage?"  *Capital City*, 788 F.3d at 379 (quoting *St. Paul Fire & Marine Ins. Co.*, 292 Md. 187).  This step of the analysis "focuses on the allegations of the tort suit."[20]  *Id.*

In the Underlying Litigation, Robinson brought four negligence claims against four defendants, asserting one count of negligence against each defendant.  Robinson named as defendants the Waste Management Plaintiffs here:  Waste Management, Inc.; Waste Management of Virginia, Inc.; King George Landfill, Inc.; and, King George Landfill Properties, LLC.  In each of the causes of action, Robinson asserted that the named defendant "breached its duty to [Robinson] by failing to" engage in a variety of tasks, each arising out of their own actions.  (*See* Underlying Litig. Compl. ¶ 43.)  Not one of the claims mentions TAC Transport and Robinson does not name as a defendant TAC Transport in the Underlying Litigation.

---

[20] Under Maryland law, the Court must determine whether even a potentiality of coverage exists under the Transportation Agreement. *See Walk*, 382 Md. at 15.  Although the WM Plaintiffs as an insured may present extrinsic evidence to establish the existence of a covered claim, *see Cochran*, 337 Md. at 111–12, they cannot use extrinsic evidence to establish the existence of "a new, unasserted claim that would create a duty to defend," *Reames*, 111 Md. App. at 561.

Even considering the extrinsic evidence on which the Waste Management Plaintiffs properly rely, the Transportation Agreement does not confer coverage. In the Transportation Agreement, TAC Transport agrees to indemnify Waste Management of Maryland, Inc. for damages caused by TAC Transport's negligence. Robinson does not bring any allegations of negligence against TAC Transport, or seek to hold any of the defendants in the Underlying Litigation vicariously liable for TAC Transport's negligence. Any claim against TAC Transport amounts only to an "[u]nasserted cause[] of action that could potentially have been supported by the factual allegations or the extrinsic evidence[, which] cannot form the basis of a duty to defend because [it] do[es] not demonstrate 'a reasonable potential that the issue triggering coverage will be generated at trial.'" *Reames*, 111 Md. App. at 561 (citing *Cochran*, 337 Md. at 112).[21]

Under the plain language of the Transportation Agreement, TAC Transport agreed "to indemnify, defend and hold harmless [Waste Management of Maryland, Inc], its subsidiaries and affiliates" for bodily injuries resulting in certain situations and to certain individuals caused by

---

[21] In opposition to this position, the Waste Management Plaintiffs direct the Court's attention to *Capital City*, 788 F.3d 375. In that case, the Fourth Circuit found that a subcontractor's insurer had a duty to defend the general contractor where the general contractor introduced extrinsic evidence of the subcontractor's work on the wall that had collapsed. *Id.* at 383–84. The Waste Management Plaintiffs' misplace their reliance on this case. Although the Fourth Circuit found a duty to defend there, it did so because "the scope of coverage under the Endorsement extends beyond acts or omissions of [the subcontractor] for which [the general contractor] was vicariously liable." *Id.* at 384.

This case differs materially from *Capital City*. First, in this case, none of the allegations in the Underlying Litigation claim that the Waste Management Plaintiffs may be held vicariously liable for TAC Transport's negligence. Second, in *Capital City*, the subcontractor and the general contractor had worked together to build the common wall, 788 F.3d at 377, while here TAC Transport has not engaged in a common enterprise that created the dangerous condition that led to Robinson's fall. Finally, unlike in *Capital City*, the Waste Management Plaintiffs have not filed a complaint against TAC Transport alleging that TAC Transport's negligence caused Robinson's fall. Based on these differences, *Capital City* cannot control.

*TAC Transport's negligence.* (Transp. Agreement 11.) However, TAC Transport did not agree to do the same if the injuries resulted from Waste Management of Maryland, Inc. (or any other entity's) negligence. Because the Underlying Litigation does not, and perhaps cannot,[22] assert a cause of action against TAC Transport, neither TAC Transport nor its insurers, the Insurance Company Defendants, have a duty to defend the Waste Management Plaintiffs under the Transportation Agreement.

The Court has determined that a duty to defend does not arise under the Transportation Agreement. The Court will now examine whether the Insurance Company Defendants have a duty to defend under the CGL Policy.

### B. The CGL Policy Does Not Give Rise to the Duty to Defend Because the Waste Management Plaintiffs Do Not Qualify As Additional Insureds Under the CGL Policy

#### 1. The CGL Policy

Because of the requirements in the Transportation Agreement, TAC Transport obtained a CGL Policy from Great Divide. The CGL Policy covered the period from November 20, 2010, to November 20, 2011, and described its coverage as:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will

---

[22] In support of their position, the Insurance Company Defendants suggest that any claim of negligence Robinson could bring against TAC Transport would be barred by the exclusivity provision of the Virginia Tort and Workers Compensation Law, VA CODE ANN. § 65.2-307. This provision provides that: "[t]he rights and remedies herein granted to an employee when his employer and he have accepted the provisions of this title respectively to pay and accept compensation on account of injury or death by accident shall exclude all other rights and remedies of such employee . . . at common law or otherwise, on account of such injury." *Id.* After his accident, "[o]ne of TAC's insurers . . . paid Robinson substantial workers compensation benefits." (Mem. Supp. Defs. Mot. Summ. J. 3.)

If Robinson accepted a worker's compensation payment his right to assert a negligence claim against TAC Transport may have been "exclude[d]" under Section 65.2-307 of the Virginia Code. But this Court need not reach whether Robinson can bring a negligence claim against TAC Transport in the Underlying Litigation.

have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply.

(Mem. Supp. Defs. Mot. Summ. J. Ex. B "CGL Policy" 7, ECF No. 70-2.) The CGL Policy also contained several exclusions, including a contractual liability exclusion and an auto exclusion, which the Insurance Company Defendants contend apply to the facts of this case.[23]

The Waste Management Plaintiffs do not argue that they constitute Named Insureds[24] under the CGL Policy. Rather they seek coverage under the CGL Policy as additional insureds. The "Additional Insured—Designated Person or Organization" endorsement TAC Transport executed as part of its CGL Policy with Great Divide identified as additional insureds "[t]hose entities with whom the named insured has executed a written contract." (*See* CGL Policy 32.) The endorsement explained that the CGL Policy provided coverage to the additional insureds

> only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by your[25] acts or omissions or the acts or omissions of those acting on your behalf: . . . in the performance of your ongoing operations; or . . . in connection with your premises owned by or rented to you.

(*Id.*)

Because TAC Transport executed the Transportation Agreement, which likely qualifies as "a written contract" under the CGL Policy, (*see id.*), with Waste Management of Maryland,

---

[23] Because the Court ultimately concludes that none of the Waste Management Plaintiffs constitute additional insureds under the CGL Policy, the Court need not reach whether one of the specified exclusions bars coverage under the CGL Policy.

[24] The CGL Policy defines the following entities as "Named Insureds": TAC Transport, LLC; TAC Companies, LLC; DiLax Trucking, Inc.; Pecaro of East Brunswick; DiLax Holding Corp.; Pecaro Acquisition Co. Inc.; TAC Transportation Services, LLC; and TAC Transport of New Jersey, Inc. (CGL Policy 50.)

[25] The CGL Policy provides that throughout the terms of the contract "the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." (CGL Policy 7.)

Inc., the Waste Management Plaintiffs claim that they constitute additional insureds under the CGL Policy. But they do not. The Waste Management Plaintiffs cannot prevail on this argument because Robinson does not seek to hold the WM Plaintiffs liable for *TAC Transport's* "acts or omissions." (*Id.*)

> **2. Because Robinson Does Not Seek to Hold the Waste Management Plaintiffs Liable for *TAC Transport's* Acts or Omissions, No Duty to Defend Exists Under the CGL Policy**

In order for a duty to defend to arise under the CGL Policy, the Waste Management Plaintiffs must satisfy the contractual definition of "additional insureds." (*Id.*) Despite the fact that the Transportation Agreement may meet part of that definition, the facts here do not satisfy the definition fully. Waste Management of Maryland, Inc. (and, for that reason, all of the WM Plaintiffs) do not constitute additional insureds under the CGL Policy. Utilizing the same two-pronged approach employed with the Transportation Agreement, the Court finds that the plain language of the CGL Policy does not confer a duty to defend the Waste Management Plaintiffs. This is so for the same reason the Transportation Agreement falters: Robinson did not, and likely cannot, assert a negligence claim against *TAC Transport*, which is a necessary basis to give rise to a duty to defend.

First, the Court looks to "the coverage and . . . the defenses under the terms and requirements of the insurance policy[.]" *Capital City*, 788 F.3d at 379 (quoting *St. Paul Fire & Marine Ins. Co.*, 292 Md. 187). To make this determination, the Court looks to "the language and requirements of the policy." *Id.* Maryland law requires the Court to "give the words of the contract their ordinary and accepted meaning." *White Pine Ins. Co.*, 233 Md. App. at 498.

The Waste Management Plaintiffs must constitute additional insureds for the Court to find a duty to defend under the CGL Policy. Although the Transportation Agreement serves as a

written contract that might allow Waste Management of Maryland, Inc., to satisfy one aspect of becoming an additional insured, it does so "only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by [*TAC Transport's*] acts or omissions." (CGL Policy 32.) The scope of the CGL Policy, in relevant part, unambiguously provides coverage for the liability of TAC Transport's actions or omissions and the liability of those additional insureds to the extent that *TAC Transport's* actions and omissions caused that liability.

With the proper scope of coverage under the CGL Policy determined, the Court must now turn to the second analysis: whether the allegations in the tort action come within the policy's coverage.[26] *Capital City*, 788 F.3d at 379.

Here, as with the Transportation Agreement, the Court cannot find that the CGL Policy requires the Insurance Company Defendants to defend the Waste Management Plaintiffs in the Underlying Litigation. Although the Waste Management Plaintiffs allege that extrinsic evidence shows that TAC Transport's negligence contributed to Robinson's injuries, this unasserted claim cannot form the basis of the duty to defend under the CGL Policy. "Unasserted causes of action that could potentially have been supported by the factual allegations or the extrinsic evidence cannot form the basis of a duty to defend because they do not demonstrate 'a reasonable potential that the issue triggering coverage will be generated at trial.'" *Reames*, 111 Md. App. at 561 (quoting *Cochran*, 337 Md. at 112). Because Robinson did not assert, and likely cannot assert, that TAC Transport's negligence contributed to his injuries, no evidence of *TAC Transport's*

---

[26] This second step "focuses on the allegations of the tort suit." *Id.* Under Maryland law, the Court must determine whether any potentiality of coverage exists under the CGL Policy. *See Walk*, 382 Md. at 15. Although the WM Plaintiffs, as insureds, may present extrinsic evidence to establish the existence of a covered claim, *see Cochran*, 337 Md. at 111–12, they cannot use this extrinsic evidence to establish the existence of "a new, unasserted claim that would create a duty to defend," *Reames*, 111 Md. App. at 561.

negligence "will be generated at trial." *Id.; see Cochran*, 337 Md. at 111–12. For this reason, no potentiality of coverage exists under the CGL Policy.

Finding that no duty to defend exists under either the Transportation Agreement or the CGL Policy, the Court now turns to the final insurance policy, the BA Policy.

### C. The BA Policy Does Not Give Rise to a Duty to Defend Because the Waste Management Plaintiffs Do Not Constitute Insureds Under the BA Policy

#### 1. The BA Policy

Pursuant to the Transportation Agreement, TAC Transport also executed with Great Divide a BA Policy. The BA Policy also covered the period from November 20, 2010, to November 20, 2011. (*See* Mem. Supp. Defs. Mot. Summ. J. Ex. C "BA Policy" 1, ECF No. 70-3.) The BA Policy contains language about the scope of coverage similar to that in the CGL Policy. The BA Policy provides coverage when

> an "insured"[27] legally must pay as damages because of "bodily injury" . . . to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto." . . . We have the right and duty to defend any "insured" against a "suit" asking for such damages. . . . However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply.

(*Id.* at 8.) The BA Policy also contains exclusions to coverage, including a contractual exclusion, which the Insurance Company Defendants suggest applies to the matter before the Court.[28]

---

[27] The BA Policy identifies three categories of insureds: (1) TAC; (2) "[a]nyone else while using with [TAC's] . . . permission a covered 'auto' [TAC] . . . own[s], hire[s], or borrow[s]" with certain, inapplicable exceptions; and, (3) "[a]nyone liable for the conduct of an 'insured' described above but only to the extent of that liability" as insured under the BA Policy. (BA Policy 8–9.)

[28] Similar to the CGL Policy, because the terms of the BA Policy do not cover the Waste Management Plaintiffs, the Court need not undertake the analysis to determine whether the contractual exclusion bars coverage under the BA Policy.

2. **No Duty to Defend Exists Under the BA Policy Because Robinson Does Not Seek to Hold the Waste Management Plaintiffs Liable for *TAC Transport's* Negligence**

Because the Waste Management Plaintiffs cannot be considered additional insureds under the BA Policy, the Court finds that no duty to defend arises under the BA Policy. The Court follows the now familiar two-step inquiry as to the duty to defend. First, the Court must examine the words of the contract to determine the proper scope of coverage under the BA Policy. *Capital City*, 788 F.3d at 379.

The BA Policy provides coverage when an "insured" legally must pay damages because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (BA Policy 8.) The policy identifies three categories of insured parties: (1) "You[29] for any covered 'auto;'" (2) "Anyone else while using with your permission a covered 'auto' you own, hire, or borrow" with certain, inapplicable exceptions; and, (3) "[a]nyone liable for the conduct of an 'insured' described above *but only to the extent of that liability*." (BA Policy 8–9 (emphasis added).)

If the Waste Management Plaintiffs could meet the third definition of insureds, the Waste Management Plaintiffs *might* qualify as an insured under the BA Policy. The Waste Management Plaintiffs do not otherwise constitute insureds under the BA Policy. To see if the Waste Management Plaintiffs qualify as an insured party under the phrase "[a]nyone liable for

---

[29] Similar to the CGL Policy, the BA Policy defines the words "you" and "your" throughout the policy as "the Named Insured shown in the Declarations." (BA Policy 7.) The Named Insured Endorsement lists the following entities as Named Insureds: TAC Transport, LLC; TAC Companies, LLC; DiLex Trucking, Inc. Pecaro of East Brunswick; DiLex Holding Corp.; Pecaro Acquisition Co., Inc.; TAC Transportation Services, LLC; and TAC Transport of New Jersey, Inc. (*Id.* 83.) The Named Insured Endorsement does not list any of the Waste Management Plaintiffs.

the conduct of an 'insured' described above *but only to the extent of that liability*," the Court must determine the scope of coverage that this definition creates under the BA Policy. (*Id.*)

Several courts have addressed the meaning of the phrase "only to the extent of that liability." These cases find coverage only when a claim of vicarious liability has been brought against an entity that is not a named insured. For instance, the Superior Court of Massachusetts in interpreting this same provision found that "for [a company] to benefit from the refuge of this provision, the individual for whom [the company] is allegedly held vicariously liable must be insured under the policy and must have affirmatively acted creating potential liability." *Domino's Pizza, Inc. v. Commerce Ins. Co.*, 12 Mass. L. Rptr. 392, at *3 (Mass. Supp. 2000). Further, the *Domino's Pizza* court held that "[i]t is crucial to the operation of [this] . . . [p]rovision, that the individual whose conduct is in question is in fact insured under the policy, because according to a plain reading of the provision, the clause is not triggered if the actor is not insured under the policy." *Id.*

Similarly, the United States District Court for the Eastern District of California found that this phrase "would apply to persons who would be vicariously liable for the insured." *GBTI, Inc. v. Ins. Co. of Pa.*, No. CV F 09-1173 LJO DLB, 2011 WL 1332165, at *7 (E.D. Cal. April 5, 2011). When interpreting a similarly worded provision,[30] the United States District Court for the

---

[30] The insurance policy at issue in *Vulcan* described "Persons Insured" as

Each of the following is an insured under this insurance to the extent set forth below:
(a) The **named insured** [Sandman]; . . .
(c) any other person while using an **owned automobile** or a **hired automobile** with the permission of the **named insured,** provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to **bodily injury** or **property damage** arising out of the loading or unloading thereof, such other person shall be an **insured** only if he is:
(1) a lessee or borrower of the **automobile,** or

28

Northern District of Illinois found that it "is plainly a vicarious liability provision and nothing more: It insures all those who may be vicariously liable for acts or omission of the named insured." *Vulcan Materials Co. v. Casualty Ins. Co.*, 723 F. Supp. 1263, 1264–65 (N.D. Ill. 1989). Based on these persuasive interpretations and the plain language of the provision, the Court concludes that for the BA Policy to provide coverage to the Waste Management Plaintiffs under this provision, the Underlying Litigation must seek to hold the Waste Management Plaintiffs vicariously liable for the conduct of one of the Named Insureds under the policy, specifically *TAC Transport*.

This brings the Court to the requisite second inquiry: whether "the allegations in the tort action potentially bring the tort claim within the policy's coverage." *See Capital City*, 788 F.3d at 379. The Court must ascertain whether any potentiality, "[e]ven a slim possibility," of a covered claim exists in the Underlying Litigation. *Cornerstone*, 555 Fed. App'x at 235–36. In the Underlying Litigation, Robinson seeks to hold the Waste Management Plaintiffs liable for only their own allegedly negligent acts. The alleged breach of duties giving rise to Robinson's injuries do not depend upon any action taken by *TAC Transport* and no claim exists that any of the entities named would be held vicariously liable for TAC Transport's own negligence.

For reasons analogous to those with respect to the other two contracts, no duty to defend exists under the BA Policy. Even presuming that the Waste Management Plaintiffs could be

---

(2) an employee of the **named insured** or of such lessee or borrower;
(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an **insured** under (a), (b) or (c) above.

*Vulcan Materials Co. v. Casualty Ins. Co.*, 723 F. Supp. 1263, 1264 (N.D. Ill. 1989) (quoting the insurance policy at issue in that case) (bold in original). The wording of subsection (d) is not identical to the provision at issue in this case, but the provisions are similar enough that a comparative assessment is informative.

deemed an insured entity under the third definition of the BA policy, the duty to defend could only arise when the entity will be held vicariously liable for the acts of another protected entity, here TAC Transport. *See Vulcan Materials Co.*, 723 F. Supp. at 1264–65; *GBTI, Inc.*, 2011 WL 1332165 at *7; *Domino's Pizza*, 12 Mass. L. Rptr. 392 at *3. Robinson did not allege that the Waste Management Plaintiffs could be held vicariously liable for the acts of TAC Transport. Furthermore, because Robinson accepted a workers' compensation settlement from TAC Transport, it appears unlikely under Virginia law that he could bring a negligence claim against TAC Transport. *See* VA CODE ANN. § 65.2-307 (establishing the exclusivity of workers' compensation relief).

Because the Waste Management Plaintiffs likely could not be held vicariously liable for TAC Transport's negligence, no duty to defend exists under the BA Policy.

## IV. Conclusion

For the foregoing reasons, the Court grants the Insurance Company Defendants' Motion for Summary Judgment and denies the Waste Management Plaintiffs' Motion for Summary Judgment. Further, the Court grants the Insurance Company Defendants' Motion to Seal, the Waste Management Plaintiffs' Motion to Strike Reply, and the Waste Management Plaintiffs' Motion to Strike Response. No later than close of business March 29, 2019, the parties shall file a joint statement regarding the next steps of this litigation. If the parties believe that a status hearing is appropriate, they must include the justification and request for a status hearing in their joint filing.

An appropriate Order shall issue.

/s/

_____

M. Hannah Lauck
United States District Judge

Date: 4/5/2019
Richmond, Virginia